[Civ. No. 19801.   Second Dist., Div. Three.   May 7, 1954.]

RAE BECKERMAN, Appellant, v. TRAFFORD HUTESON, Respondent.

Moidel, Moidel, Moidel & Smith and Isadore Moidel for Appellant.

Marcus, Rabwin, Nash & Naiditch and Louis Naiditch for Respondent.

WOOD (Parker), J.—Plaintiff commenced this action as assignee of Herman Cannon, a real estate salesman, to recover commissions allegedly due the salesman from defendant, a real estate broker. Defendant's motion for nonsuit was granted. Plaintiff appeals from "the order of nonsuit and judgment for costs."

At the trial the depositions of Cannon and defendant were received in evidence, and it was stipulated that said "depositions may become part of the record on appeal in lieu of the reporter's transcript of the testimony." Those depositions, not having been included in the reporter's transcript, nor having been sent to this court, this court ordered that the depositions be transmitted here. They have been considered as a part of the record on appeal.

Cannon was employed by defendant as a salesman from May 18, 1951 to September 12, 1951. At the time he became so employed, he and defendant made an oral agreement to share expenses and to divide commissions. While he was employed by defendant they consummated two deals and divided the commissions. Also while he was so employed they made efforts on behalf of Liberty Building Company to purchase 250 acres of land from the Pomona Valley Company but the transaction was not consummated. On June 7, 1951, Liberty paid $1,000 to defendant, and defendant paid one-half thereof to Cannon.

Cannon testified that defendant was drinking heavily and was unable to work steadily; in the early part of September he told defendant that he wanted to go with another broker and wanted his license transferred, and the defendant "agreed to that." Then he left defendant's place of business and was employed by another broker. He testified further that he was not discharged by defendant—he left of his own accord; prior

to leaving the employ of defendant, the defendant did not tell him that the deal for the Pomona property had fallen through; he (Cannon) did not know whether it fell through—it was a question of not being able to get financing.

Defendant testified, under section 2055 of the Code of Civil Procedure, that in October or November, 1951, the Pomona Valley Company was dissolved and its assets were divided among the shareholders; in December, 1951, defendant sold about 49 acres of the property (which was then owned by shareholders) to Liberty for $132,300; also in December he sold the remainder of the property (owned by shareholders) to Hillcrest Investment Company for $448,700; he received commissions on those sales. The negotiations on behalf of Liberty Building Company were conducted by Norman Feintech. The negotiations on behalf of Hillcrest Investment Company were conducted by Norman and Irving Feintech. Defendant testified further that, while Cannon was employed by him, Norman Feintech, vice president of Liberty, asked defendant if he could locate some property for that company; when defendant and Cannon learned about the Pomona property they told Liberty about it; Norman Feintech said they could not pay more than $2,000 an acre for it; defendant obtained information regarding the property and submitted a report to Liberty on May 19, 1951; thereafter executives of Liberty told defendant that there would be no need to look at the Pomona property again—the sellers were talking about $3,000 an acre and would not accept their offer; thereafter defendant talked with a representative of Pomona Valley Company, who said that the company would be willing "to talk $2,300" an acre; on June 7, 1951, Liberty rejected "the deal" and gave defendant a check for $1,000, and he gave one-half of it to Cannon; on August 24, 1951, Norman Feintech told defendant that Liberty wanted acreage near Van Nuys; at that time Cannon said that defendant was a fool to waste any more time with Liberty Building Company, and that defendant had no chance to make a deal—as far as he (Cannon) was concerned he would not waste any more time with them.

Appellant contends that the motion for nonsuit should not have been granted; that Cannon did not waive his right to share in the commissions.

▮ In ruling upon a motion for a nonsuit the evidence must be viewed in the light most favorable to plaintiff. ▮ The evidence herein, viewed in accordance with that

rule, was not of sufficient substantiality to support a finding for plaintiff. The testimony of Cannon shows that he voluntarily terminated his employment with defendant and went to work for another broker. There is no evidence of any agreement that Cannon should receive any commission on a transaction that was consummated after he had terminated his employment. There is no evidence that the sales of the property were the result of the efforts of defendant and Cannon or either of them during the time Cannon was employed by defendant. On June 7, 1951, about three months before Cannon left said employment, the Liberty Building Company gave defendant $1,000 for some purpose in connection with the Pomona property transaction, and defendant divided said amount with Cannon. There is no evidence that Liberty showed any further interest in the Pomona property during the remainder of the time (about three months) Cannon was employed by defendant, and there is no evidence that Hillcrest or anyone showed any interest therein during that time. Defendant testified, under section 2055 of the Code of Civil Procedure, that Cannon told him, about three weeks prior to leaving, that defendant had no chance to make a deal with Liberty and that he (Cannon) would not waste any more time with it. Cannon did not dispute that testimony. The trial judge properly granted the motion for a nonsuit.

The order and judgment are affirmed.

Shinn, P. J., and Vallée, J., concurred.